IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**CYNTHIA ANN FRAMPTON**,

    Plaintiff,

v.

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**,

    Defendant.

No. CV 08-1400-PK

OPINION AND ORDER

**MOSMAN, J.**,

On December 21, 2009, Magistrate Judge Papak issued Findings and Recommendation ("F&R") (#24) in the above-captioned case recommending that I AFFIRM the Commissioner's decision and DISMISS this action with prejudice. No objections to the F&R were filed.

Upon review, I agree with Judge Papak's recommendation and I ADOPT the F&R (#15) as my own opinion. I conclude that the ALJ properly evaluated Dr. Kent's opinion, as well as the testimony from Plaintiff Cynthia Frampton and her husband, James Frampton. I also find that the ALJ hearing complied with due process by providing Ms. Frampton with a meaningful opportunity to be heard.

## DISCUSSION

**I.**    **Standard of Review**

The magistrate judge makes only recommendations to the court, to which any party may file
PAGE 1 - OPINION AND ORDER

written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination of those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any of the magistrate judge's F&R. 28 U.S.C. § 636(b)(1)(C).

### I.     Dr. Kent's Opinion

Ms. Frampton argues that the ALJ assigned too little weight to the opinion of Dr. Kent, her treating psychiatrist. In January 2006, Dr. Kent opined that Ms. Frampton assessed several marked functional limitations related to Ms. Frampton's depression. The opinions of treating physicians are generally entitled to more weight than the opinions of nontreating physicians, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008), but the contradicted opinion of a treating physician may be rejected if the ALJ cites specific, legitimate reasons based on substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of an examining physician may be sufficient to reject a treating physician's opinion if the examining physician's opinion is based on independent clinical findings. *Andrews*, 53 F.3d at 1041. Here, Dr. Kent's treating physician opinion was contradicted by other evidence in the record—including the opinions of other examining and nonexamining physicians.

PAGE 2 - OPINION AND ORDER

Specifically, the ALJ relied on the following evidence in contradiction of Dr. Kent. Dr. Clausel, a psychologist who examined Ms. Frampton in 2003 and 2005, opined that Ms. Frampton's depression and associated functional limitations were "mild." AR 18, 21, 490-92. Dr. Clausel frequently observed that Ms. Frampton seemed to intentionally underperform on tests and exaggerate her symptoms. AR 21, 490-92. Because Dr. Clausel is an examining physician who rendered a contravening opinion based on his own independent clinical findings, AR 18, 21, 350-56, 488-93, his opinion provides substantial evidence justifying the ALJ's decision to discredit Dr. Kent's opinion. Dr. Clausel's opinion is further supported by the opinions of several nonexamining state agency physicians. AR 21, 437-39, 515-16.

Additionally, the ALJ noted that Dr. Kent's diagnosis of severe depression was inconsistent with his own treatment notes, which often indicated that Ms. Frampton appeared "bright and animated" during her visits. AR 21, 560-64. Dr. Kent noted that Ms. Frampton was "a little overly dramatic about her symptoms," which was consistent with Dr. Clausel's opinion that Ms. Frampton exaggerated her symptoms. AR 21, 490, 563. Significantly, Dr. Kent questioned Ms. Frampton's self-reporting in August 2005, only four months before evaluating Ms. Frampton's functional limitations in January 2006. AR 21, 532, 563. Although there was an intervening death in the family, these remain as specific, legitimate reasons to reject Dr. Kent's opinion, and the reasons are supported by substantial evidence. Therefore, I find no error in the ALJ's decision to reject Dr. Kent's opinion.

## II. Ms. Frampton's Testimony

Ms. Frampton also argues that the ALJ erred by determining that Ms. Frampton "lack[ed] credibility concerning her limitations and the severity of her conditions." AR 23. Because Ms. Frampton's medical record established her depression as a "medically determinable impairment," the

ALJ must offer clear and convincing reasons to reject Ms. Frampton's testimony about the severity of her symptoms. *See Carmickle*, 533 F.3d at 1160. Here, the ALJ noted several clear and convincing pieces of evidence that undermined Ms. Frampton's credibility. Significantly, a treating physician (Dr. Kent) and an examining physician (Dr. Clausel) both noted that Ms. Frampton seemed to exaggerate her symptoms. AR 21, 490, 563. Additionally, Ms. Frampton put her credibility in question by initially telling Dr. Kent that she was not depressed and then later stating that she had lied to Dr. Kent and, in fact, had a significant history of depression. AR 18, 501.

Ms. Frampton's work history was also inconsistent with the functional limitations she described.[1] As Judge Papak noted, Ms. Frampton "report[ed] that her depression prevented her from engaging in normal social interactions," but she had been regularly employed at a coffee shop and left that job "not because of social anxiety, but 'because she was not getting enough hours.'" AR 21, 587; F&R (#24) 14. Ms. Frampton also reported that she did not have the strength to do a 40-hour a week job, yet she also reported that she occasionally worked five or six days a week. AR 20, 23, 588-89. She stated that she could only "stand 20-25 minutes, walk to the end of her block, and sit for 15-20 minutes," but she regularly worked six to eight-hour days at a tanning salon where she was required to stand, walk, and clean continuously throughout the day. AR 20, 22, 577-80, 602. Ms. Frampton stated that she always has someone accompany her to the grocery store because of her social anxiety, yet she goes to work alone. AR 22-23, 298, 581. Viewed as a whole, the doctors' observations and the foregoing inconsistencies are clear and convincing reasons to discredit Ms.

---

[1] I recognize that the Commissioner must evaluate the claimant's "ability to work on a sustained basis," 20 C.F.R. § 404.1512(a), and that "[o]ccasional symptom-free periods—and even the sporadic ability to work—are not inconsistent with disability," *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). Nevertheless, it was appropriate for the ALJ to evaluate Ms. Frampton's credibility by comparing Ms. Frampton's work activity to her self-reported functional limitations.

PAGE 4 - OPINION AND ORDER

Frampton's testimony about the limitations and severity of her condition.

### III. Mr. Frampton's Testimony

I agree with Judge Papak that the ALJ properly discredited Mr. Frampton's testimony. If an ALJ rejects lay witness testimony entirely, she must give reasons for doing so. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Mr. Frampton stated that Ms. Frampton could walk about two blocks before needing to rest, could only pay attention for ten minutes at a time, and could only sweep or mop for fifteen minutes before needing to rest for forty-five minutes. AR 22, 176, 304-05. As the ALJ noted, Mr. Frampton's testimony was inconsistent with Ms. Frampton's ability to work six to eight-hour days, several days a week, in jobs that involved walking, standing, cleaning, concentration, and significant interaction with the public. AR 22-23, 577-80. Mr. Frampton's testimony was also inconsistent with several physicians' opinions. AR 22. These are germane reasons to reject Mr. Frampton's testimony.

### IV. Due Process

Because Ms. Frampton also raised a due process challenge to the ALJ's decision, I address her arguments briefly here. Ms. Frampton argues that her due process rights were violated when the ALJ terminated the hearing without receiving additional testimony from Ms. Frampton or her husband, James Frampton. Ms. Frampton appeared at the ALJ hearing in Pendleton, Oregon, represented by counsel. AR 572. Ms. Frampton's testimony comprised at least three-fourths of the hour-long hearing. AR 572-614. When the ALJ terminated the hearing, Ms. Frampton's counsel requested a supplemental hearing in which Ms. Frampton could continue her testimony and Mr. Frampton could also testify. AR 612. The ALJ took counsel's request under advisement, but indicated that any supplemental hearings would have to be held in Portland, Oregon. AR 612.

PAGE 5 - OPINION AND ORDER

Counsel appeared reluctant to travel to Portland for a hearing, so the ALJ advised counsel to supplement the record with written testimony. AR 612-13. Ms. Frampton's counsel later submitted a transcript of Mr. and Ms. Frampton's supplemental recorded testimony, along with a cover letter stating, "There will be no more evidence forthcoming. Please proceed with your decision." AR 293. The ALJ considered this supplemental testimony in reaching her decision, but ultimately gave the testimony little weight because it was "inconsistent with medical evidence and [Ms. Frampton's] own reports of her work abilities." AR 22.

I conclude that Ms. Frampton was not denied due process. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted). Ms. Frampton received a meaningful opportunity to be heard at the ALJ hearing, as well as after the hearing, when the ALJ permitted Ms. Frampton to supplement the record with transcribed testimony. In light of the fact that her additional testimony and her husband's testimony were later submitted to and considered by the ALJ, AR 22, Ms. Frampton has not shown how she was prejudiced by not receiving a supplemental hearing.

Accordingly, the Commissioner's decision is AFFIRMED and this action is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this  27th  day of January, 2010.

>      /s/ Michael W. Mosman
> MICHAEL W. MOSMAN
> United States District Court

PAGE 6 - OPINION AND ORDER